THE STATE OF OHIO, APPELLEE, *v.* MARKO, APPELLANT.

(No. 73AP-104—Decided August 21, 1973.)

APPEAL: Court of Appeals for Franklin County.

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Miles C. Durfey,* for appellee.
*Messrs. Tyack, Scott & Colley* and *Mr. Paul Scott,* for appellant.

TROOP, P. J. Edward Marko was indicted for receiving and concealing stolen property in violation of R. C. 2907.30. He was tried to a jury which returned a verdict of guilty, February 1, 1973. A judgment, rendered pursuant to the verdict, was entered February 22, 1973, and this appeal is taken from that judgment.

A single assignment of error is offered in support of the appeal, to wit: the trial court erred in overruling defendant's motion to suppress evidence obtained by an illegal search and seizure. Defendant, the appellant herein,

raises two questions to be considered and resolved in the disposition of the appeal, and then answers the questions with positive assertions, the first one of which is that:

"* * * a lapse of two months between the time of the offense and the issuance of a search warrant is too remote in time to establish probable cause that the residence searched contained the objects described in the affidavit."

Defendant's proposition is bottomed on two dates; the first, March 9, 1972, was the occasion of a burglary, about 1:30 a. m., of the premises of Auld Crafters, Inc., at 801 South Front Street, and the second, May 12, 1972, was the day of the arrest of one Albert Gordon, a participating burglar, who on the day of his arrest informed police officers of the location of the stolen goods. The interval of time between the two dates is approximately two months. Such delay, argues counsel for the defendant, creates a danger that essential probable cause for the issuance of a search warrant is predicated upon "stale information."

The affidavit for the search warrant, and the warrant issued in response thereto, are important to this discussion. The affidavit filed in the Franklin County Municipal Court indicates that Detective R. Wolverton and Sergeant Edward Holzbacher, being duly sworn, did depose and say "that he has good cause to believe and does believe" that:

"Property stolen in a burglary at 801 S. Front St., Columbus, Ohio. Columbus Police Report number OR 8783-72 [March 1972] of which an inventory list is attached, are being kept in a certain building or room known as 1910 Gantz Road, and a Camping Trailer located at this address, in said County of Franklin, Ohio, for the purpose Concealment of property taken in the crime of burglary.

"The facts upon which such belief is based are as follows: Information received from one Albert Gordon, Who was the person who committed the above burglary, and stated that he and one Roger Jones and one Harold Orr, Jr., took the property that they stoled [sic] from 801 S. Front st. to 1910 Gantz rd. and gave it to one Ed Marko, who resides at that location."

Such affidavit indicates that it was sworn to and signed in the presence of G. W. Fais, Judge, Franklin County Municipal Court, Columbus, Ohio, the magistrate.

The essential portion of the warrant to search directed to the Franklin County Sheriff, and signed by the magistrate, reads as follows:

"WHEREAS there has been filed with me an affidavit, a copy of which appears on the reverse side, these are, therefore, to command you in the name of the State of Ohio, with the necessary and proper assistance, to enter (in the nighttime) into premises known as 1910 Gantz Road and the camping vehicle parked in the driveway of 1910 Gantz Rd. in Franklin County, Ohio, aforesaid, and there diligently search for (the said goods, chattels, or articles), to wit: Property stolen in a burglary at 801 South Front at Columbus, Ohio. Columbus Police Report No. OR 8783-72 of which an inventory list is attached."

Defendant introduces argument in support of his proposition as to "stale information" by suggesting that any information offered to procure a search warrant must be from a credible person and not vague and uncertain. Reference is to a decision in *Aguilar* v. *Texas* (1964), 378 U. S. 108, which sets out some fundamentals as to the quality of an affidavit for a search warrant. The decision points out that the information need not come from the direct observation of the affiant, in fact, it may be based on hearsay, but the magistrate must be informed of some underlying circumstances relied on by the person providing the information and assured the informant is credible.

Police Officer Wolverton testified that he told sheriff's deputy Holzbacher, who signed the affidavit, that one Albert Gordon told him of the location of the stolen property, Gordon and two others having committed the burglary. The magistrate knew the two police officers and, obviously, regarded them as credible. The questioning of credibility can only apply to Gordon. It could well be that a known burglar would be regarded as totally lacking in credibility. It must be understood in this case, however, that Gordon did not resort to surmise, supposition, or hearsay, but rather, told the police officer who arrested him that he and his two

cohorts delivered the stolen goods to one Ed Marko at a certain given address. The statement from one of those who did the stealing, and one who participated in the delivery of the stolen goods, must be regarded at least reasonably credible. Officer Wolverton told the magistrate where he got the information on the stolen goods and the affidavit was signed subsequent to that communication to the magistrate.

Counsel cites a number of federal decisions on the matter of "stale information," there being a paucity of Ohio decisions in the area. The federal decision most useful to defendant is that in *Rosencranz* v. *United States* (C. C. A. 1, 1966), 356 F. 2d 310. Headnote sixteen presents the general rule, as follows:

"The possibility of using ancient information as a basis for issuance of search warrant should not be created by permitting affidavit for warrant in present tense without giving time of receiving information on which affiant relies."

The court held that the affidavit involved was in the present tense and was therefore defective since it did not show the time when the information was received from an anonymous informer. In the course of its decision, the court mentioned the tendency of the trial courts to determine the validity of the affidavit on a motion to suppress rather than allowing it to remain with the issuing magistrate, saying, at page 317:

"Such deferral of this issue would shift the responsibility of passing on the officer's judgment from the commissioner to the trial court. To the extent this were done, the function of the warrant-issuing magistrate would wither away to the point of being a vestigial formality."

It must be noted at this point that the "informer" in this case was not anonymous.

A review of the decisions upon which defendant relies brings out some fundamentals which must be respected in given situations—many of the fact patterns involved having unique and distinguishing facets. For example, in *Sgro* v. *United States* (1932), 287 U. S. 206, there are two federal statutes controlling the issuance of search warrants in

118

cases concerned with the seizure of illegal intoxicating liquor, making such warrants void at the end of ten days from the date of issuance. It was stated, in paragraph three of the syllabus:

"The issue of a new warrant is a new proceeding and must be supported by proof that probable cause exists."

*Schoeneman* v. *United States* (D. C. Cir., 1963), 317 F. 2d 173, seems to favor defendant's cause since the application for the warrant was made 107 days after the finding of the documents which constituted the basis for the search. This, in basic fact, counts the days from the offense, which is comparable to the situation in the case here for review, if the burglary was the offense and the search warrant related to it. As to the present fact pattern, the offense is receiving and concealing, not known to exist as an offense until the police officers were told by Gordon what disposition was made of the stolen property.

The court in *Schoeneman* provides two basic rules in headnotes three and four. They read as follows:

"In determining probable cause for issuance of search warrant, time alone is not controlling.

"Probable cause to justify issuance of search warrant must be determined as of the time the warrant is issued."

In *United States* v. *Guinn* (C. C. A. 5, 1972), 454 F. 2d 29, there was an unnamed informant who furnished information on gambling equipment in a given trailer, which was to be transported from Oklahoma to Fort Worth and Sealy, Texas. Headnote six provides a rule as follows:

"Affidavit in support of a search warrant must speak as of time of issue of warrant; however, there is no arbitrary time limit on how old information contained in an affidavit may be."

A "moonshine" operation from June to September was the subject of a decision in *United States* v. *Johnson* (C. C. A. 10, 1972), 461 F. 2d 285, which produced this interesting rule in headnote three, as follows:

"Vitality of probable cause in respect to issuance of a search warrant cannot be quantified by simply counting number of days between occurrence of facts relied upon and issuance of affidavit in support of warrant; nature of

unlawful activity must be considered together with element of time.''

Note again, the emphasis upon the days between the ''occurrence of facts relied upon'' and the ''issuance of [the] affidavit in support of [the] warrant.''

In headnote six of *Johnson* is found the following very broad proposition:

''In determining sufficiency of affidavit for issuance of search warrant, Commissioner should consider all elements of probable cause, including nature of criminal activity, length of activity, and nature of property to be seized; probable cause, in turn, should be contemplated in view of practical considerations of everyday life.''

*Durham* v. *United States* (C. C. A. 9, 1968), 403 F. 2d 190, presents a very simple rule, at page 193. The suggestion is that the facts available to justify a conclusion by a commissioner to issue a warrant should show:

''* * * that the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued.''

The court qualifies its general proposition, saying that the commissioner's conclusion should not relate to some ''remote'' time in the past. It is made clear in *Durham*, also, that if the search warrant is issued solely on the basis of the affidavit, then the affidavit must establish probable cause. *Durham* was concerned with counterfeiting equipment with a single date stated in the affidavit and nothing contained therein indicated that the activity continued. Since more than four months had elapsed before the warrant was issued, it was held to be an unlawful search, even though the agent knew that a steady flow of counterfeit notes were in circulation in the same community and of the same kind up to the time of the search. It was clear from the court's finding that the information of the continuing circulation of the notes was not in the affidavit and the agent did not communicate the facts of its continuing circulation to the commissioner at the time of the issuance of the warrant.

In conclusion, we note a decision in *United States* v. *Van Ert* (E. D. Wis. 1972), 350 F. Supp. 1339. In this fact

pattern, 55 days elapsed between the observations of the informer concerning movable property and the application for a warrant. The court held there was no probable cause. This rather simple situation illustrates exactly the point with which we are concerned. The informant in *Van Ert* knew the location of the movable property and did not immediately make application for a search warrant. In the instant case, the police officers learned of the location of the stolen property on the day of Gordon's arrest and immediately filed the application for a search warrant.

The "observation" or knowledge of the location of the stolen property came to police officer Wolverton on May 12, 1972, producing probable cause to believe the offense of receiving and concealing had been, and was continuing to be, committed and, without any delay between occurrence and the filing of an affidavit, a search warrant issued. In light of the composite of rules suggested in the cases reviewed, it is concluded that the magistrate had before him sufficient credible evidence, in no sense stale, to establish probable cause, and the search warrant was, therefore, proper. It must be emphasized in this case that the search warrant related to the offense of receiving and concealing, not to the burglary.

A second question is raised by defendant. The positive statement of the supporting proposition reads as follows:

"The issuance of a nighttime search warrant is invalid when the supporting affidavit is barren of any circumstances indicating urgent necessity."

The controlling Ohio statute includes a rule as to the time of service. R. C. 2933.24 reads, in part, as follows:

"* * * The command of the warrant shall be that the search be made in the daytime, unless there is urgent necessity for a search in the night in which case a search in the night may be ordered."

Text materials generally seem to suggest a rule of reasonableness in the application of the statute. 47 American Jurisprudence 526, Searches and Seizures, Section 40, contains some general rules, as follows:

"* * * the mere fact that a search warrant was issued early enough in the day to permit its execution in the day-

time did not make its execution in the night unreasonable."

"The execution of a search warrant at night is not violative of the constitutional provisions against unreasonable searches, although it is advisable, as far as is reasonably practicable, that searches be executed in the daytime."

"If a search is to be made at night, the authority for so doing should appear in the warrant."

Footnote cases have some interest. In *Voorhies* v. *Judge* (1922), 220 Mich. 155, 189 N. W. 1006, headnote six of 189 N. W. 1006 states:

"Though the execution of a search warrant should speedily follow its issuance, there is not on the face of the matter any illegality in the execution in the nighttime of a warrant issued in the forenoon of the preceding day."

In *Denton* v. *State* (1937), 62 Okla. Crim. Rpts. 8, 70 P. 2d 135, the court suggested that if the affidavit was "positive," the magistrate might direct a night search and that the direction should be in the warrant whether "in the day" or "in the day or nighttime."

It should be noted that the direction is in the warrant issued in the instant case.

The decision in the only Ohio case suggested as in point, *State* v. *Sabo* (1923), 108 Ohio St. 200, is one in which the magistrate used a printed form which included directions for both night and daytime searches, such as was used in the instant case, and the magistrate neglected to strike out one of them. In supporting its conclusion that the search warrant was valid (paragraph two of the syllabus), the court said, at page 203: .

"* * * For this reason the objection must be regarded as a purely technical one. Aside from its purely technical character, however, it is difficult to find any possible invalidity in the warrant by reason of the neglect or inadvertence of the officer preparing the warrant. The carelessness of the officer is of course to be condemned, but the validity of his process should not be overthrown on purely technical grounds where no possible injury has resulted."

The rule of reasonableness is well illustrated in the

decision law upon which the defendant relies. Counsel for defendant suggests that the court in *United States* v. *Rabich* (C. C. A. 2, 1970), 421 F. 2d 1196, "implied" that the presence of the registrants for a motel room would destroy the validity of a night search warrant for such room. The result reached by the court can also be said to be quite reasonable, since if nobody was in the room there was no privacy to be invaded and, even though the search warrant contained no authorization for a search at night, the reason for requiring specific authorization for a night search and for somewhat higher standards of proof becomes a complete nullity.

There can be no quarrel with the result reached in the case of *Monroe* v. *Pape* (1961), 365 U. S. 167, which was a civil suit against the city of Chicago, arising out of the fact that police officers broke into the petitioner's home in the early morning and did so without a search warrant. Interestingly, the court held that the complaint stated a cause of action against the police officers but not against the city of Chicago. Again, in the case of *United States* v. *Myers* (C. C. A. 3, 1968), 398 F. 2d 896, the result reached can only merit approval. A writ of habeas corpus was granted, without prejudice to trial by the state again, because the magistrate had issued a search warrant which "specified a daytime search." That sort of a direction, the court said, does not mean at "any hour of the day or night." *Myers* contributes an important general rule. It is found in headnote two and reads as follows:

"When right of privacy must reasonably yield to right of search is, as a rule, to be decided by judicial officer, not by policeman or government agent."

Quite properly, the court held that a search at 2:30 a. m. was invalid.

A bank robbery was the subject of the decision in *United States* v. *Smith* ( D. Conn. 1972), 340 F. Supp. 1023. Basically, the court concluded that the warrant to search the defendant's home (money being the object of the search) did not satisfy requirements for a nighttime search because the facts alleged were not so definite and explicit that all doubt was removed with regard to the property being on

the premises. The introductory paragraph to this case also said that there was a serious question as to whether the agent who procured the affidavit had knowledge which came to him from another agent. *United States* v. *Green* (D. C. 1971), 331 F. Supp. 44, was a narcotics case. It was troublesome only because federal law authorized service at night whereas a District of Columbia statute provided that a judge or commissioner should include in the search warrant a direction as to when it should be served. Such conflict produced a conclusion by the court to deny a motion to suppress.

Perhaps the most significant decision cited to the court was that in *Coyne* v. *Watson* (S. D. Ohio 1967), 282 F. Supp. 235. The rule in headnote four reads as follows:

"Affidavit for search warrant must contain something affirmatively indicating that there is probable cause at or about time search warrant is applied for."

Headnote five seems to continue the same thought by adding:

"* * * information indicated probable cause at time of application not five or six days or months previously."

The most significant contribution made by the *Coyne* decision arises out of a quote from the decision in *United States* v. *Ventresca* (1965), 380 U. S. 102, at 109, which reads as follows:

"* * * the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in the area should be largely determined by the preference to be accorded to warrants."

The property stolen was decidedly movable—watches, radios, and so forth. One of the burglars revealed its location at the time of his arrest. As soon as the police learned of the offense of receiving and concealing, they moved to recover the stolen articles still in the possession of the then known offender. The information before the magistrate, as indicated by the affidavit and the transcript of the evidence at the hearing on the motion to suppress, is sufficient to

justify the issuance of a warrant with the direction to search in the night season. The proclivity of small stolen articles to disappear when the news of an arrest circulates, as it does quite quickly in the criminal world, is well known.

R. C. 2933.24 imposes upon a judge issuing a search warrant an affirmative duty to determine whether "there is urgent necessity for a search in the night." Unless the issuing judge finds such urgent necessity to exist, the search must be ordered to be conducted in the daytime. However, this determination is one lying within the sound discretion of the issuing judge. A search ordered to be conducted in the night cannot be found to be improperly ordered unless the complaining party demonstrates that the issuing judge abused his discretion in ordering the search in the nighttime rather than in the daytime. Here, while it may be debatable as to whether there was an urgent necessity for a search in the night, there has been no showing of an abuse of discretion on the part of the issuing judge in so determining.

To order a search in the night season was within the prerogative of the magistrate, and his decision "should be largely determined by the preference to be accorded to warrants." Defendant's single assignment of error and the supporting propositions noted are not well taken and are therefore overruled.

The judgment of the trial court is affirmed and this appeal is dismissed.

*Judgment affirmed.*

STRAUSBAUGH and WHITESIDE, JJ., concur.