DECISION AND JUDGMENT ENTRY
This is an appeal from the denial of Defendant-Appellant Leonard M. Ridgeway's motion to suppress evidence, which led to appellant's plea of no contest to two crimes: (1) attempted illegal manufacture of drugs in violation of R.C. 2923.02(A) and 2925.04, a third-degree felony; and (2) possession of drugs in violation of R.C. 2925.11, a fifth-degree felony. The Washington County Court of Common Pleas found appellant guilty of both crimes and sentenced him to three-years imprisonment for attempted illegal manufacture of drugs, and one-year imprisonment for possession of drugs, to be served concurrently.
Appellant presents this Court with essentially two arguments. First, he argues that there was no probable cause to issue the warrant to search appellant's residence. Second, he argues that the trial court's finding that there was a single, continual search was unsupported by the evidence. Appellant maintains that there were actually two separate searches, one conducted pursuant to a warrant, the other conducted without a warrant.
We find appellant's arguments to be without merit and affirm the well-reasoned judgment of the trial court.
 I. STATEMENT OF THE CASE AND FACTS
On January 12, 1999, Detective Rodney J. Kinzel of the Washington County Sheriff's Department (WCSD) submitted an application to a judge of the Washington County Court of Common Pleas, Probate Division, requesting a warrant to search appellant's residence for evidence relating to the production of crystal methamphetamine.[1] In support of this application, Detective Kinzel prepared an affidavit which he presented to the issuing judge.
In this supporting affidavit, Detective Kinzel referred to a confidential informant who had conveyed to him "information regarding methamphetamine manufacture and sale" by appellant. Detective Kinzel also described his efforts to corroborate the information provided by the informant in this affidavit. The details of this affidavit will be explored infra.
Based on this affidavit, the judge issued to Detective Kinzel, or "any law enforcement officer with authority," a warrant to search appellant's residence.[2]
 A. The Search
Two days after the warrant application was granted, on January 14, 1999, Detective Kinzel and other members of the WCSD executed the warrant and searched appellant's property, seizing two "red bottled tanks," a "metal box with tin containers," a "cardboard box with two pills," a "glass bottle," and a "suspected crack pipe."
However, WCSD determined that it would not seize any additional evidence from the premises at that time because of the dangers inherent in methamphetamine laboratories and because it did not have the facilities necessary to retain and safely store such hazardous materials.
Instead, WCSD instructed its officers to secure appellant's residence pending the arrival of agents from the Drug Enforcement Administration (DEA) who were trained and experienced in safely conducting such searches.
Shortly thereafter, DEA agents arrived at appellant's residence and completed the seizure; seizing myriad items related to the production of crystal methamphetamine, e.g., chemicals, jars, funnels, an electronic scale, and the drug itself.
 B. The Motion To Suppress
In June 1999, appellant filed a motion with the lower court to suppress all evidence seized from his residence by the DEA and WCSD. In support of this motion, appellant argued, inter alia, that: (1) there was no probable cause to support the warrant because the information in Detective Kinzel's affidavit was stale; and (2) there were actually two separate searches, one conducted by WCSD pursuant to a warrant, and a second conducted by the DEA without a warrant.
In August 1999, the lower court held a hearing on appellant's motion to suppress. Detective Kinzel was the sole witness who testified at this hearing. The details of his testimony will be visited infra.
By a journal entry filed in November 1999, the trial court denied appellant's motion to suppress evidence. Consequently, appellant pled no contest to two crimes: (1) attempted illegal manufacture of drugs in violation of R.C. 2923.02(A) and 2925.04, a third-degree felony; and (2) possession of drugs in violation of R.C. 2925.11, a fifth-degree felony. The lower court found appellant guilty of both crimes and sentenced him to three-years imprisonment for attempted illegal manufacture of drugs and one-year imprisonment for possession of drugs, to be served concurrently.
II. ASSIGNMENTS OF ERROR
Appellant has timely filed this appeal, assigning the following errors for our review.
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE WHEREAS THE PROSECUTION FAILED TO MEET ITS BURDEN OF PRODUCTION OF A LAWFUL SEARCH AND SEIZURE.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED BY THE DRUG ENFORCEMENT AGENCY FROM THE DEFENDANT-APPELLANT'S RESIDENCE ON JANUARY 15, 1999 BECAUSE THE EVIDENCE WAS UNLAWFULLY SEIZED IN VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED AS THE RESULT OF THE EXECUTION OF THE SEARCH WARRANT ISSUED JANUARY 12, 1999 BECAUSE THE INFORMATION CONTAINED IN THE CONFIDENTIAL INFORMANT'S [sic] AFFIDAVIT, WHICH WAS THE BASIS FOR THE ISSUANCE OF THE WARRANT, WAS NOT TIMELY ENOUGH TO SATISFY THE PROBABLE CAUSE REQUIREMENT.
We will evaluate appellant's assignments of error in a sequence conducive to our analysis.
 A. Existence of Probable Cause For The Warrant
In appellant's Third Assignment of Error, he argues that there was no probable cause for the trial court to issue the search warrant because the information contained in Detective Kinzel's supporting affidavit was stale. We disagree.
In State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, the Supreme Court of Ohio set forth the analysis to be applied in resolving such issues.
In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, * * * an appellate court should [not] substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. (Emphasis added.) Id. at 325, 544 N.E.2d at 640, paragraph one of the syllabus (following Illinois v. Gates (1983),462 U.S. 213, 103 S.Ct. 2317); accord State v. Goddard (Oct. 2, 1998), Washington App. No. 97CA23, unreported.
We note that "this standard of review is more deferential than the review we engage in other contexts involving a motion to suppress." Goddard, supra; see State v. McNamee (2000), 139 Ohio App.3d 875,745 N.E.2d 1147; see, e.g., State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141.
Here, Detective Kinzel, in his supporting affidavit, explained that, over the course of fourteen days, a confidential informant provided myriad information regarding the purported "methamphetamine manufacture and sale" by appellant.
 1. Staleness Of Information
Appellant argues that the informant's information is stale by quoting two sentences from the affidavit: "[the informant] had personally been inside this location approximately one year prior" and that "[the informant] had personally seen vials and tubes in the living room of the residence at this location a long time ago." (Emphasis added.).
Information that evidence existed in the past may or may not be helpful in determining whether the evidence is still present at that location. "The more `stale' the evidence becomes, the less likely it is to support probable cause." Katz, Ohio Arrest, Search and Seizure (2001 Ed.) 77, Probable Cause — Staleness of Information; see, generally, State v. Jones (1991), 72 Ohio App.3d 522, 526, 595 N.E.2d 485, 488 ("It is a basic, fundamental principle of the law of search and seizure that an affidavit for a search warrant must present timely information.").
Staleness cannot be expressed in terms of a precise amount of time because standards vary depending on the type of evidence at issue. See, e.g., State v. Yanowitz (1980), 67 Ohio App.2d 141, 147, 426 N.E.2d 190,195 (holding that, "there is no arbitrary time limit on how old information can be"); accord State v. Marko (1973), 36 Ohio App.2d 114,303 N.E.2d 94. Accordingly, Ohio courts have consistently recognized differences between fungible or quickly disposable evidence and that which is more permanent in nature. See, e.g., Andresen v. Maryland
(1976), 427 U.S. 463, 96 S.Ct. 2737; State v. Swearingen (1999),131 Ohio App.3d 124, 721 N.E.2d 1097.
Even then, there are no bright-line rules — the issuing judge must consider the "totality of the circumstances," and we, in turn, must determine whether the judge had a "substantial basis * * * to conclude there was a fair probability that evidence of a crime would be found in the place to be searched." Goddard, supra; accord Sgro v. United States
(1932), 287 U.S. 206, 210, 53 S.Ct. 138, 140 ("[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case."); see, generally, United States v. Spike (1998 6th Cir.),158 F.3d 913 (explaining that, even if a significant period of time — in Spike, four years — has elapsed since a defendant's last purported criminal activity, it remains feasible that a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises to be searched).
Consistent with the foregoing, courts have held repeatedly that "an affidavit which establishes a pattern of conduct or indicates an ongoing investigation can justify the granting of a search warrant based on old information." State v. McKenzie (Sept. 18, 1998), Erie App. No. E-97-040, unreported; accord State v. Jones, 72 Ohio App.3d at 522,595 N.E.2d at 485; State v. Hollis (1994), 98 Ohio App.3d 549, 649 N.E.2d 11;State v. Floyd (Mar. 29, 1996), Darke App. No. 1385, unreported; Statev. Massengill (Mar. 9, 1988), Summit App. No. 13321, unreported; Andresenv. State (1975), 24 Md. App. 128, 331 A.2d 78 ("The observation of a half-smoked marijuana cigarette * * * may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.").
Here, the statements of the informant that appellant is contesting — when the informant was in appellant's house and when he or she saw vials and tubes in appellant's living room — are in the context of an allegation that appellant is engaged in an ongoing drug business.
In addition to these two statements, the informant provided the following information: that he or she was "aware of a methamphetamine lab in Washington County"; that the informant was "aware that the person operating this lab had been cooking methamphetamine for a significant period of time and was in fact teaching others to cook [it]"; that there was a "garage on the [w]est [s]ide of Marietta at which * * * supplies and finished product" are kept; and that he or she saw daily a buyer who used and sold the methamphetamine produced by appellant.
Further, the informant provided Detective Kinzel a detailed description of the chemicals and processes used by appellant to produce the drug, as well as the names of some of the chemical suppliers. Detective Kinzel provided in his affidavit that some of the named suppliers confirmed that they had recently sold chemicals to appellant or an associate of appellant.
Further still, Detective Kinzel recounted in his affidavit the impression of appellant's neighbors that appellant was "cooking methamphetamine."
Upon consideration of all of the circumstances set forth in the affidavit, we conclude that the issuing magistrate did have a substantial basis for concluding that probable cause existed to issue the search warrant. See State v. George, 45 Ohio St.3d at 325, 544 N.E.2d at 640, at paragraph one of the syllabus ("[A]ppellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant."); accord Goddard, supra; see, generally, State v.Gale (1991), 105 Or. App. 489, 805 P.2d 158 ("[An affidavit based on four-year-old information, w]hen viewed as a whole, * * * demonstrates the probability of ongoing criminal activity, repeated at the same location and using equipment of a durable nature [;] * * * that evidence of methamphetamine production would be found on [the defendants'] property.").
 2. The Good-Faith Exception
Even if we were to find that this affidavit did not furnish the issuing judge with a substantial basis for concluding that there was probable cause to search appellant's residence, we would nevertheless uphold the search based on the good-faith exception to the exclusionary rule set forth in United States v. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405, and adopted by the Supreme Court of Ohio in State v. Wilmoth (1986),22 Ohio St.3d 251, 490 N.E.2d 1236. See, generally, State v. George,45 Ohio St.3d at 325, 544 N.E.2d at 640 ("[W]e have chosen to apply a two-step analysis * * *. First, applying the * * * test of [Gates, supra] * * *. Second, we have determined that in any event, the execution of this warrant * * * [was] well within the standards of the `good faith exception' to the exclusionary rule set forth in [Leon, supra].").
The Leon Court defined the good-faith exception as "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Leon,468 U.S. at 922-923, 104 S.Ct. at 3420.
The Supreme Court of Ohio in George, supra, stated the following.
 In the case before us, there is no suggestion of falsity or reckless disregard for the truth on the part of the affiant. Nor is there any indication that the municipal judge "* * * wholly abandoned his judicial role * * *" in issuing this warrant. * * * Nor can we say, from the standpoint of the law enforcement officers, that a warrant approved by a judge which describes [the cultivation and sale of a drug] * * *, is either "* * * so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable * * *'" or "* * * so facially deficient * * * that the executing officers cannot reasonably presume it to be valid." * * * Accordingly, we find that this search falls squarely within the good faith exception to the exclusionary rule set forth in Leon and Wilmoth, supra, and should be upheld even were the warrant lacking in probable cause as alleged.
Id. at 331, 544 N.E.2d at 647, quoting United States v. Leon,468 U.S. at 897, 104 S.Ct. at 3405.
Here, as in George, we find that there is no suggestion of falsity or reckless disregard of the truth by Detective Kinzel. See id. Likewise, there is no indication that the issuing judge "wholly abandoned his judicial role" in issuing the warrant. Id. Further, we do not find that the affidavit or the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or "so facially deficient * * * that the executing officers cannot reasonably presume it to be valid." Id.
Correspondingly, we find that a reasonably well-trained officer would not have known that the search was illegal despite the issuing judge's authorization. See United States v. Leon, 468 U.S. at 922-923,104 S.Ct. at 3420.
Therefore, like the George Court, we find that the warrant was not based on stale information, and, in any event, the execution of the warrant was well within the standards of Leon's good-faith exception to the exclusionary rule.
Appellant's Third Assignment of Error is OVERRULED.
 B. The DEA's Search And Seizure
Appellant argues in his First and Second Assignments of Error that there were actually two separate searches, one conducted by WCSD pursuant to the warrant, and a second conducted by the DEA without a warrant. Thus, appellant maintains, the search by the DEA was unconstitutional and the evidence it seized must be suppressed. Again, we disagree.
At the hearing on the motion to suppress evidence, Detective Kinzel testified as follows: "I believe that * * * after the decision was made not to obtain any more evidence * * * the house was secured pending [the DEA's] arrival"; that WCSD was instructed to await the DEA because "crystal methamphetamine labs were extremely dangerous and could be highly explosive and, unless we were trained, it was not safe for us to enter that area"; that the items seized by the DEA were part of the same search initiated by WCSD; and the reason this single search appears to be conducted on two separate dates — January 14 and 15, 1999 — is because "it may have gone into the morning of the [fifteenth]."
Clearly, the trial court found the testimony of Detective Kinzel to be convincing. We emphasize that our review of a trial court's findings of fact is highly deferential. See State v. Banks (1992), 78 Ohio App.3d 206,214, 604 N.E.2d 219, 225 (explaining that, appellate review is to be "tempered by the principle that questions of weight and credibility are primarily for the trier of fact"); see, generally, Whiteside, Ohio Appellate Practice (2001 Ed.) 287-291, Standards of Review (explaining that deference regarding credibility should be given to the lower court because "the finder of fact has had an opportunity to observe the demeanor of the witnesses, a factor not normally preserved in the record of appeal").
Accordingly, we find that the record contains the proper, credible evidence to support the trial court's finding that there was one continuous, constitutional search pursuant to a valid search warrant, and that the evidence was properly seized by the DEA. See Ornelas v. UnitedStates (1996), 517 U.S. 690, 116 S.Ct. 1657; State v. Duncan (1998),130 Ohio App.3d 77, 719 N.E.2d 608.
As an aside, we note that, in this case, it was not necessary for the DEA to get a separate warrant from that requested by Detective Kinzel. Here, the warrant was not issued only to Detective Kinzel; rather, it named him and "any law enforcement officer with authority."
In considering a similar warrant, the Sixth District Court of Appeals held that, "if for any reason the named person on the warrant is unable to execute the warrant, then any other officer with authority may step in his place and effectively execute the warrant." State v. Klein (Apr. 12, 1985), Wood App. No. WD-84-76, unreported; see, generally, R.C. 2933.24.
Here, Detective Kinzel testified that he was unable to complete the search because "crystal methamphetamine labs were extremely dangerous and could be highly explosive and, unless we were trained, it was not safe for us to enter that area." Thus, we find it was proper that the DEA was included in this search and seizure.
Appellant's First and Second Assignments of Error are OVERRULED.
 IV. CONCLUSION
For the foregoing reasons, we OVERRULE appellant's assignments of error and AFFIRM the well-reasoned judgment of the Washington County Court of Common Pleas.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the WASHINGTON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILY CONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLY POSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment Only.
[1] Crystal methamphetamine is a "a potent central nervous system stimulant." Methamphetamine, U.S. Department of Justice, Drug Enforcement Administration (Aug. 13, 2001)http://www.usdoj.gov/dea/concern/meth.htm'. Crystal methamphetamine has several different names — e.g., Ice, Crank, Crystal, and Speed — and is used by snorting, smoking, or injection. See id. Amphetamines increase heart rate, blood pressure, and breathing rate and constrict blood vessels, release sugar and fat into the blood stream, and energize the brain. See id. Amphetamine usage results in feelings of alertness, exhilaration, and euphoria. See id. However, if the stimulation is too high, it produces feelings of panic, paranoia, and rage, as well as hallucinations and seizures, which may lead to stroke. See id.
[2] We note that Detective Kinzel also used this affidavit to secure a warrant for the search of appellant's garage. The search of this building is not the subject of this appeal.