**[Cite as *State v. Noble*, 2020-Ohio-695.]**

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28435 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-3596/1 |
| | : | |
| KELLI RAE NOBLE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of February, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CHRISTOPHER C. GREEN, Atty. Reg. No. 0077072, 130 West Second Street, Suite 830, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Kelli Rae Noble appeals her conviction for one count of aggravated possession of drugs (five times bulk but less than 50 times bulk), in violation of R.C. 2925.11(A), a felony of the second degree. Specifically, Noble argues that the trial court erred when it overruled her motion to suppress regarding the search warrant issued in the case. Noble filed a timely notice of appeal with this Court on June 11, 2019.

{¶ 2} In early September 2018, the Germantown Police Department received information from the Middletown Special Operations Unit and a confidential informant that someone was selling methamphetamine out of an apartment residence on N. Main Street (Apt. 4), between September 10 and September 13, 2018. The confidential informant told the police that Noble was the individual actually selling methamphetamine from the apartment. Germantown Police Detective R. W. Sarver then directed the confidential informant to perform a controlled buy at the apartment, during which the informant obtained drugs from Noble which were later determined to be methamphetamine.

{¶ 3} On September 13, 2018, Detective Sarver drafted a search warrant affidavit in which he set forth the aforementioned facts. Detective Sarver also averred that the "most recent purchases ha[d] occurred with[in] the last 72 hours," between September 10 and September 13, 2018. The affidavit sought to search the property for "illegal narcotics to include methamphetamine," money related to the sale of drugs, drug records or documents, any digital media depicting the sale, manufacture, or use of illegal drugs, paraphernalia, lock boxes or safes, and weapons related to the sale of drugs. Detective Sarver also averred that there was an "urgent necessity for a nighttime search" of the apartment. The search warrant was signed and issued by a judge from the Miamisburg Municipal Court at 8:59 p.m. on September 13, 2018, and specifically provided that there

was an urgent necessity to justify a nighttime search of the apartment.

{¶ 4} Shortly after it was signed, the search warrant was executed at the apartment. During the search, police officers found a large amount of pills and methamphetamine inside of a locked safe, as well as drug paraphernalia. Noble was arrested at the scene and taken into custody.

{¶ 5} On September 24, 2018, Noble was indicted for the following offenses: Count I, aggravated trafficking in drugs (five times bulk but less than 50 times bulk – vicinity of school or juvenile), in violation of R.C. 2925.03(A)(2), a felony of the first degree; Count II, aggravated possession of drugs (five times bulk but less 50 times bulk), in violation of R.C. 2925.11(A), a felony of the second degree; and Count III, drug paraphernalia, in violation of R.C. 29295.14(C)(1), a misdemeanor of the fourth degree. At her arraignment on September 27, 2018, Noble stood mute, and the trial court entered a plea of not guilty on her behalf.

{¶ 6} Noble filed a motion to suppress on October 29, 2018. In her motion, she argued that the search warrant did not contain sufficient facts to establish that a nighttime search was permissible. Noble also argued that the search warrant did not specifically permit the police officers to search the inside of a locked safe. On May 9, 2019, the trial court issued a written decision overruling Noble's motion to suppress in its entirety.

{¶ 7} Thereafter, Noble entered into a negotiated plea agreement wherein she pled no contest to one count of aggravated possession of drugs in exchange for dismissal of the remaining two counts. The parties also agreed upon a jointly-recommended sentencing range of three to nine years. At her disposition on May 22, 2019, the trial court sentenced Noble to four years in prison and waived imposition of the mandatory

fine.

**{¶ 8}** It is from this judgment that Noble now appeals.

**{¶ 9}** Because they are interrelated, Noble's first and second assignments of error will be discussed together as follows:

THE TRIAL COURT ERRED WHEN IT HELD THAT THE NIGHTTIME WARRANT ISSUED BY A MAGISTRATE WAS PERMISSIBLE WHEN THERE WERE NO FACTS PRESENTED IN THE AFFIDAVIT INDICATING A NIGHTTIME SEARCH WARRANT WAS NECESSARY.

THE TRIAL COURT ERRED WHEN IT HELD THAT THE WARRANT ISSUED BY THE MAGISTRATE PERMITTED THE SEARCH OF A LOCKED SAFE. THE AFFIDAVIT SOUGHT A SEARCH WARRANT OF CONTAINERS IN THE HOUSE, HOWEVER, THE ISSUED WARRANT EXCLUDED THAT SPECIFIC REQUEST.

**{¶ 10}** Noble contends the trial court erred when it overruled her motion to suppress because the search warrant and affidavit did not contain sufficient facts to establish that a nighttime search was necessary and permissible. Additionally, Noble argues that the search warrant did not specifically permit the police officers to search the inside of a locked safe. Therefore, Noble argues that the officers' search of the locked safe was impermissible.

**{¶ 11}** In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d

498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 12} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and/or things to be seized. *See also State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 11.

{¶ 13} In authorizing a search warrant, the issuing magistrate's duty is to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place * * *." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Jones* at ¶ 13. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Gates* at 238-239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 35. Ordinarily, "a probable cause inquiry must be confined to the four corners of the affidavit." *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996). In reviewing whether a search warrant has been issued upon probable cause, courts must examine the totality of the circumstances. *Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 15.

{¶ 14} Trial courts and appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus; *Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 14.

### Execution of Nighttime Search Warrant

{¶ 15} Initially, we note that while Detective Sarver's affidavit did specifically state that an urgent necessity existed to justify a nighttime search of the apartment, the affidavit contains no additional facts supporting Detective's Sarver's averment that a nighttime search was necessary.

{¶ 16} The procedure to be followed in executing a search warrant is set forth in R.C. 2933.24(A), as follows:

> The warrant shall command the officer or individual to search the place or person named or described for the property, and to bring them, together with the person, before the judge or magistrate. The command of the warrant shall be that the search be made in the daytime, unless there is urgent necessity for a search in the night, in which case a search in the night may be ordered.

Crim.R. 41(C)(2) also provides that "[t]he warrant shall be executed in the daytime, unless the issuing court, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." The term "daytime" is used in this rule to mean the hours from 7:00 a.m. to 8:00 p.m. Crim.R. 41(F).

{¶ 17} A magistrate's decision to authorize a night time search is reviewed for an

abuse of discretion. *State v. Marko*, 36 Ohio App.2d 114, 124, 303 N.E.2d 94 (10th Dist.1973); *State v. Eichhorn*, 47 Ohio App.2d 227, 353 N.E.2d 861 (10th Dist.1975). In order to find an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996).

{¶ 18} As previously stated, Detective Sarver drafted a search warrant affidavit in which he averred that the Germantown Police Department received information from the Middletown Special Operations Unit and a confidential informant that someone was selling methamphetamine out of an apartment residence on N. Main Street between the dates of September 10 and September 13, 2018. The affidavit also stated that the confidential informant identified Noble as the individual selling methamphetamine from the apartment. Detective Sarver then directed the confidential informant to perform a controlled buy at the apartment, during which the informant obtained drugs from Noble which were later determined to be methamphetamine.

{¶ 19} Detective Sarver also averred that the "most recent purchases have occurred with[in] the last 72 hours." The affidavit sought to search the property for "illegal narcotics to include methamphetamine," money related to sale of drugs, drug records or documents, any digital media depicting the sale, manufacture, or use of illegal drugs, paraphernalia, lock boxes or safes, and weapons related to the sale of drugs. Detective Sarver also averred that there was an "urgent necessity for a nighttime search" of the apartment. The search warrant signed by the judge on September 13, 2018, specifically

provided that there was an urgent necessity to justify a nighttime search of the apartment.

{¶ 20} Although the affidavit neglected to specify what facts warranted a nighttime search, a review of the affidavit in its entirety reveals a number of relevant facts. *See State v. Gipson*, 3d Dist. Hancock No. 5-09-19, 2009-Ohio-6234, ¶ 35. Although no specific reasons supporting a nighttime search were included in the affidavit, we agree with the trial court that there were enough relevant facts contained in the affidavit to support the issuance and execution of a nighttime search warrant. Detective Sarver had personal knowledge that methamphetamine was being sold out of the apartment from September 10, 2018, through September 13, 2018. Additionally, the Ohio Supreme Court has noted that an illegal drug transaction in today's society "reasonably warrants the conclusion that a suspected dealer may be armed and dangerous." *State v. Evans*, 67 Ohio St.3d 405, 413, 618 N.E.2d 162 (1993); *see also State v. Dickerson*, 179 Ohio App.3d 754, 2008-Ohio-6544, 903 N.E.2d 697, ¶ 18 (2d Dist.) (Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon).

{¶ 21} In support of her argument that the nighttime search warrant was not justified or permissible, Noble cites to *State v. Ballard*, 7th Dist. Mahoning No. 76 CA 38, 1976 WL 188624 (Oct. 13, 1976). In *Ballard*, the affidavit used to obtain the nighttime warrant provided that, based upon complaints from citizens about illegal drug activity at a specific residence, the officers initiated an investigation of the home and its residents. *Id*. at *2. Using a confidential informant, the officers conducted a controlled drug buy, thereby securing a quantity of marijuana. Officers also arrested two individuals observed leaving the residence when one of the individuals stated that he purchased marijuana at

the house. The other individual stated that she observed a large quantity of marijuana on the floor in the house, she observed another unidentified person purchase marijuana in the house, and she observed white pills inside the house. Based upon these facts in the affidavit, the officers requested a nighttime search warrant, stating that there was an "urgent necessity for the search thereof to be made in the (nighttime)." *Id.* Similar to the instant case, the officers failed to include any specific facts in the affidavit regarding why a nighttime search was necessary. Nevertheless, the magistrate in *Ballard* issued a nighttime search warrant for the residence in question.

{¶ 22} Upon review, the Seventh District Court of Appeals agreed with the trial court and held that the information in the affidavit was sufficient for the magistrate to issue a nighttime search warrant. The *Ballard* court noted that at the suppression hearing, one of the arresting officers testified that the two individuals stopped and arrested by the officers were being released from custody later that day, and there was a probability then that the individuals would have informed the defendant of their arrest, and most likely the contraband later seized would have disappeared before the search warrant could have been executed. *Id.* at *2. However, as noted by the *Ballard* court, this testimony was only presented at the suppression hearing and *was not* included in the affidavit at the time officers requested the nighttime warrant from the magistrate. Simply put, the magistrate did not consider this information at the time it issued the nighttime search warrant.

{¶ 23} Rather, the *Ballard* court held that "it is obvious that merely from the facts set forth in the affidavit, there existed probable cause for a nighttime search. Criminal Rule 41(C) does not require such facts to be spelled out any differently than all other facts used to show probable cause." *Id.* In the instant case, Noble mistakenly argues that

because of the officer's testimony at the suppression hearing regarding the destruction of drugs, the *Ballard* court found that the affidavit contained sufficient facts to issue a nighttime search warrant. As previously stated, however, the *Ballard* court did not rely upon the suppression testimony, but only considered the facts contained in the affidavit when it held that the facts in the affidavit supported the issuance of a nighttime search warrant.

{¶ 24} Contrary to Noble's argument, the facts in the instant case are similar to those in *Ballard*. Specifically, the police departments in both cases received complaints regarding illegal drug activity at homes in their respective jurisdictions. Both investigations included the use of confidential informants who performed successful controlled drug buys. Significantly, the drugs obtained by the informants in both cases were the same illegal drugs that the officers believed were being sold from each of the residences. "The fact situation, as set forth above in the affidavit for search warrant, indicates that this is a drug trafficking and selling case, and, by its very nature, is the type of crime done in extreme secrecy, and in the nighttime when the chances of observation or being caught are in the least." *Ballard* at *3.

{¶ 25} Upon review, we conclude that the trial court did not abuse its discretion when it overruled Noble's motion to suppress. On the record before us, it is apparent that the trial court found that the nighttime search warrant was valid in light of the information contained in Detective Sarver's affidavit and the reasonable inferences to be made surrounding the recent trafficking and the sale of illegal drugs.

{¶ 26} Noble's first assignment of error is overruled.

**Search of the Locked Safe**

{¶ 27} In her second assignment, Noble argues that the trial court erred when it held that the search warrant permitted the search of a locked safe found in the apartment. Specifically, Noble contends that because Detective Sarver's affidavit requested the search of safes and lock boxes, but the search warrant omitted those items, the locked safe was outside the scope of the permissible items to be searched.

{¶ 28} In regards to the place and items to searched, the affidavit stated as follows:

5. I am requesting permission to enter the above residence and search for a quantity of illegal narcotics to include methamphetamine, moneys that would relate to the sale of such drugs, drug records and documents, photographs, cell phones, digital cameras, media cards, audio or visual documentation depicting the trafficking, manufacture, and or use of illegal drugs, drug paraphernalia, lock boxes or safes, weapons that would be used for the protection of such drugs and fruits of the crime. And requesting the search of Kelli Noble's person.

{¶ 29} The search warrant signed by the magistrate stated in pertinent part:

II. That the following described items of property are connected with the commission of said offense(s):

1. Unknown amount of illegal narcotics.

2. Unknown weapons.

3. Unknown amount of moneys.

III. That the said items of property are concealed either:

a. Inside the residence of * * * N. Main St. Apt. #4 Germantown OH 45327.

The residence is described as [a] two story, multiple unit residence. Apt.

#4 is located within that structure[.] [It] has grey siding and white trim. The numbers * * * are clearly displayed on front of the residence. Apt. #4 is located upstairs and is indicated with a RED #4 on the door and all curtilage to the residence, persons present and vehicles under their control.

{¶ 30} Regarding the particularity of the warrant, as noted in *State v. Castagnola*:

Courts addressing the particularity requirement of the Fourth Amendment are concerned with two issues. The first issue is whether the warrant provides sufficient information to "guide and control" the judgment of the executing officers in what to seize. *United States v. Upham*, 168 F.3d 532, 535 (1st Cir.1999). The second issue is whether the category as specified is too broad in that it includes items that should not be seized. *See United States v. Kow*, 58 F.3d 423, 427 (9th Cir.1995).

*Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 79.

{¶ 31} "Although police may be lawfully on the premises with a valid search warrant, the search is limited to those areas which may reasonably contain the items listed in the warrant." *State v. Nelms*, 2017-Ohio-1466, 81 N.E.3d 508, ¶ 10 (2d Dist.), quoting *State v. Halczyszak*, 25 Ohio St.3d 301, 323, 496 N.E.2d 925 (1986), fn. 9. Any container found on the premises may be searched if it could contain the object of the search. *United States v. Ross*, 456 U.S. 798, 820-821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to

complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*Id.*

{¶ 32} In *State v. Brewster*, 1st Dist. Hamilton Nos. C-030043, C-030052, C-30053, 2004-Ohio-2722, the search warrant issued permitted the police officers to search for "equipment or articles used in the manufacturing or reproduction of negotiable items such as checks," including computer equipment and software, receipts, ledgers, and personal papers that showed control, ownership or distribution of contraband, currency, weapons, or money transfers. *Id.* at ¶ 36. Therefore, the *Brewster* court held that locked fire safes seized by the police could easily have contained documents or other things used in the manufacturing, reproduction or use of forged checks. *Id.* "Consequently, they fell within the scope of the search warrant, and the police officers did not have to obtain an additional warrant to open the safes." *Id.*; *see also State v. Napier*, 2d Dist.

Montgomery No. 17326, 1999 WL 249174, *2-3 (Apr. 16, 1999) (upholding the seizure of drugs found in a zipped gym bag in a closet while searching for computer disks associated with the sale of illegal alcohol).

{¶ 33} In *United States v. Church*, 823 F.3d 351 (6th Cir.2016), the court stated the following:

> "[A]lthough a warrant to search for a stolen vehicle would not justify opening a small wall safe in a bedroom closet, judicial authorization to search a home for contraband drugs, money associated with drug trafficking, and drug paraphernalia would clearly justify the opening of doors, closets, drawers, safes, and other places where the listed items could be hidden." *United States v. Lengen*, 245 Fed.Appx. 426, 434 (6th Cir.2007). The government is thus correct that guns and drugs, which are small enough to fit inside the safe and were in fact found in the safe, were within the scope of the warrant.

*Id*. at 364 (Griffin, J., concurring).

{¶ 34} In the instant case, the search warrant issued by the magistrate permitted the officers to search the apartment for illegal narcotics, weapons, and money. All of these items could have reasonably been located in the locked safe found in the apartment named in the search warrant. Therefore, Detective Sarver was not required to obtain a second search warrant because the first warrant did not specifically permit the search of a locked safe. Accordingly, Detective Sarver was acting within the scope of the warrant when he opened the locked safe, and the trial court did not err when it overruled Noble's motion to suppress with respect to the issue.

{¶ 35} Noble's second assignment of error is overruled.

{¶ 36} Both of Noble's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J., concurs:

{¶ 37} I concur in the majority opinion. I also concur in that portion of Judge Froelich's concurring opinion in which he concludes that the exclusionary rule is not an available remedy when a search warrant is executed during the nighttime in violation of R.C. 2933.24(A) and Crim.R. 41(C)(2).

FROELICH, J., concurs in judgment only:

{¶ 38} R.C. 2933.24(A) requires daytime searches "unless there is urgent necessity for a search in the night." Crim.R. 41(C)(2) similarly requires daytime execution of a warrant unless the issuing court, "for reasonable cause shown, authorizes its execution at times other than daytime."

{¶ 39} Here, there was no "reasonable cause shown" for a nighttime search. The issuing judge did not know when in the last three days the drugs were sold, whether it was during the day or night, whether people occupied the apartment during the day and/or night, whether the officers' search was time-sensitive, or any facts from which the judge could evaluate "reasonable cause."

{¶ 40} There is little doubt that drug sales and weapons are often at the same location, but if the legislature in its statute or the Ohio Supreme Court in its rule intended to exclude drug offenses from the requirement that "reasonable cause [be] shown" for the

"urgent necessity" of a nighttime warrant, they could have provided accordingly. *See, e.g.,* 21 U.S.C. 879 ("A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time."). Otherwise, the statute and Criminal Rule are merely precatory, but ultimately meaningless, admonishments.

{¶ 41} However, the Ohio Supreme Court has stated that, under both the Fourteenth Amendment and Article I, Section 14 of the Ohio Constitution, suppression is not an available remedy for violation of Ohio's knock-and-announce law. *State v. Bembry,* 151 Ohio St.3d 502, 2017-Ohio-8114, 90 N.E.3d 891, ¶ 8, following *Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). I can find no basis to distinguish the knock-and-announce law from the law concerning nighttime searches as it relates to the applicability of the exclusionary rule. Accordingly, I concur in this court's judgment.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Christopher C. Green
Hon. Dennis J. Adkins