**[Cite as *State v. Glynn*, 2020-Ohio-4763.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-410 |
| | : | |
| CHE D. GLYNN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of October, 2020.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

JOE CLOUD, Atty. Reg. No. 0040301, 3973 Dayton-Xenia Road, Beavercreek, Ohio 45432
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Che D. Glynn, appeals from his conviction in the Greene County Court of Common Pleas after he pled no contest to one count of conspiracy to trafficking in cocaine and one count of trafficking in heroin. In support of his appeal, Glynn contends that the trial court erred as a matter of law and abused its discretion when it failed to suppress evidence that was seized at his residence, because it was obtained by virtue of a deficient search warrant that was issued without a showing of probable cause. Upon review, we find that the affidavit filed in support of the search warrant provided sufficient probable cause for the search of Glynn's residence and that the trial court did not err as a matter of law or abuse its discretion by failing to suppress the evidence found therein. Accordingly, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On June 8, 2018, a Greene County grand jury returned a nine-count indictment charging Glynn with possession of drugs, trafficking in drugs, aggravated trafficking in drugs, and conspiracy to trafficking in drugs. The charges arose after law enforcement officers executed a search warrant for Glynn's residence on Dellwood Drive in Fairborn, Ohio. During the search of Glynn's residence, the officers discovered approximately 25 grams of cocaine mixed with fentanyl inside multiple baggies. The officers also discovered a scale covered with white residue, two cell phones, spoons with white powder on them, and other items of drug paraphernalia. A second search warrant was thereafter issued for the two cell phones discovered inside Glynn's residence.

{¶ 3} After pleading not guilty to the indicted charges, Glynn filed a motion to suppress the evidence obtained during the search of his residence and two cell phones.

As part of his motion, Glynn argued that the search warrant issued for his residence was defective because the affidavit filed in support of the warrant did not set forth sufficient probable cause for the search. Glynn further argued that the search warrant for his two cell phones was equally defective given that the phones would not have been discovered but for the initial defective search of his residence.

{¶ 4} On October 10, 2018, the trial court held a hearing on Glynn's motion to suppress. During that hearing, the parties agreed that the issue raised in Glynn's motion required a "four corners analysis" whereby the trial court would simply review the affidavits filed in support of the search warrants to determine whether the warrants were sufficiently supported by probable cause. Therefore, neither party presented any witness testimony at the hearing, but instead, they submitted the relevant search warrants and supporting affidavits as joint exhibits. *See* Joint Exhibit Nos. 1 and 2.

{¶ 5} The affidavit filed in support of the search warrant for Glynn's residence was prepared by Det. Brian Neiford of the Fairborn Police Department. *See* Joint Exhibit No. 1. In the affidavit, Det. Neiford averred that he had been a law enforcement officer since 1995, a detective with the Fairborn Police Department for five years, and a Greene County ACE Task Force agent since August 2017. Det. Neiford further averred that he had attended training seminars on drug investigations, such as NARCO Basic Drug Investigation School, and had investigated many different types of felony offenses that had resulted in successful prosecutions.

{¶ 6} With regard to Glynn, Det. Neiford averred that a confidential source ("CS") placed telephone calls to Glynn on May 22 and 24, 2018, for purposes of arranging two drug deals. During the May 22nd call, the CS spoke to Glynn's wife and co-defendant,

Loretta Glynn, and arranged to purchase one gram of heroin for $130. During the May 24th call, the CS spoke to Glynn directly and arranged to purchase one gram of heroin for $135. Det. Neiford averred that during each call, Glynn and his wife told the CS to meet them at their residence on Dellwood Drive in Fairborn.

{¶ 7} Det. Neiford's affidavit next described the events surrounding the two drug deals set up by the CS. Det. Neiford averred that prior to both drug deals, he and two other detectives met with the CS at a predetermined location and searched the CS to ensure that the CS did not have any money or contraband on his/her person. Thereafter, the CS was provided with buy money and driven to the area of Glynn's residence. Det. Neiford averred that he observed the CS walk to Glynn's residence where the CS met Glynn. Det. Neiford then observed Glynn invite the CS into his residence.

{¶ 8} Det. Neiford also averred that the CS was electronically monitored during the two drug deals at Glynn's residence. During both drug deals, the CS gave the buy money to Glynn, and Glynn thereafter retrieved the purported heroin/fentanyl and handed it to the CS. Det. Neiford averred that the CS then exited the residence and walked back to the detectives' vehicle where the CS turned over the purported heroin/fentanyl. The purported heroin/fentanyl was then taken to the property room at the Fairborn Police Department.

{¶ 9} Det. Neiford further averred that he was familiar with the modus operandi of persons involved in the illicit distribution of controlled substances. Det. Neiford then described several known traits of drug traffickers, which included that "it is common for drug traffickers and drug distributors to conceal drugs, contraband, proceeds of drug sales, at locations within their residences * * *." Joint Exhibit No. 1.

{¶ 10} Det. Neiford also prepared the affidavit submitted in support of the search warrant for the two cell phones discovered in Glynn's residence. *See* Joint Exhibit No. 2. That affidavit contained the same basic information about Det. Neiford's experience, the two drug deals with Glynn, and the modus operandi of persons involved in the illicit distribution of drugs. The affidavit also contained additional modus-operandi averments regarding the use of cell phones, including that: "criminals will commonly document their illegal activities via video and still photos created with the cellular phone camera" and also "commonly store criminal associates' names and phone numbers in the phone for easy communication purposes." Joint Exhibit No. 2.

{¶ 11} Det. Neiford additionally averred to the search of Glynn's residence by the ACE Task Force and all the contraband found as a result of the search. Specifically, Det. Neiford stated that approximately 25 grams of suspected cocaine mixed with fentanyl was discovered in multiple baggies inside Glynn's residence. Det. Neiford also averred that Glynn's residence contained a scale covered with white residue, spoons with white powder on them, items of drug paraphernalia, and the two cell phones that were the subject of the warrant being applied for.

{¶ 12} After reviewing the supporting affidavits and the parties' supporting memoranda, on August 12, 2019, the trial court issued a decision denying Glynn's motion to suppress. Following the trial court's decision, Glynn entered into a plea agreement with the State and pled no contest to one third-degree felony count of conspiracy to trafficking in cocaine in violation of R.C. 2923.01(A)(2) and R.C. 2925.03(A)(2), and one third-degree felony count of trafficking in heroin in violation of R.C. 2925.03(A)(2). In exchange for Glynn's no contest plea and for his forfeiture of certain items of property,

the State agreed to dismiss the remaining seven charges in the indictment.

{¶ 13} The trial court accepted Glynn's no contest plea and found him guilty of conspiracy to trafficking in cocaine and trafficking in heroin.   Thereafter, the trial court imposed an aggregate sentence of 24 months in prison, which the trial court stayed pending an appeal from Glynn's conviction.   Glynn now appeals from his conviction, raising two assignments of error for review.

## First Assignment of Error

{¶ 14} Under his first assignment of error, Glynn contends that the trial court erred as a matter of law when it overruled his motion to suppress the evidence seized from his residence.   Glynn argues that the evidence should have been suppressed because the search warrant obtained for his residence was deficient in that it was issued without a showing of probable cause.   We disagree.

{¶ 15} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and " 'is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' "   *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994).   We "must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record."   *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994).   Accepting those facts as true, we then must determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied.   *Id*.

{¶ 16} With regard to search warrants, it is well established that they "may only be issued upon probable cause, supported by oath or affirmation particularly describing the place to be searched, and the person and/or things to be seized." *State v. Perez*, 2015-Ohio-1753, 32 N.E.3d 1010, ¶ 9 (2d Dist.), citing *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 11; U.S. Constitution, Fourth Amendment; Ohio Constitution, Article I, Section 14. Thus, "a request for a search warrant requires a sworn affidavit 'establishing the grounds for issuing the warrant.' " *State v. McClain*, 2015-Ohio-3690, 41 N.E.3d 871, ¶ 5 (2d Dist.), quoting Crim.R. 41(C)(1). "The judge may issue a search warrant if the judge finds, based on the information in the affidavit, that 'probable cause for the search exists.' " *Id.*, quoting Crim.R. 42(C)(2).

{¶ 17} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Ordinarily, 'a probable cause inquiry must be confined to the four corners of the affidavit.' " *State v. Noble*, 2d Dist. Montgomery No. 28435, 2020-Ohio-695, ¶ 13, quoting *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996).

{¶ 18} " '[T]he duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for * * * conclud[ing]" that probable cause existed.' " *Jones* at ¶ 13,

quoting *Gates* at 238-239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In doing so, "reviewing courts must examine the totality of the circumstances." *Id.*, citing *Gates* at 238. " '[T]rial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.' " *Id.* at ¶ 14, quoting *George* at paragraph two of the syllabus.

{¶ 19} Glynn first contends that the search warrant for his residence was issued without probable cause because the affidavit filed in support of the search warrant failed to validate the veracity and credibility of the CS. Specifically, Glynn argues that the affidavit failed to aver how the CS knew Glynn and his wife, and whether the CS had ever provided reliable information to law enforcement in the past that led to other successful drug transactions and arrests. Glynn claims that without this information, the affidavit failed to provide a substantial basis for the trial court to determine that the facts averred in the affidavit were credible and true. Glynn's claim lacks merit.

{¶ 20} We addressed a similar argument in *State v. Lane*, 2d Dist. Greene No. 07-CA-14, 2008-Ohio-1605. In that case, the appellant argued, in part, that the affidavit filed in support of a search warrant for his residence failed to establish probable cause because the affidavit contained no averment from which the trial court could have concluded that the confidential informants were credible, reliable sources of information. *Id.* at ¶ 14. Despite this omission, we found that the totality of the circumstances set forth in the affidavit established probable cause for the search warrant because the information provided by the confidential informants was corroborated by the investigating detective's observations. *Id.* at ¶ 17. Specifically, we stated that:

Detective Tidd did not aver that [the confidential informants] had provided reliable information in the past. However, the basis of their knowledge of the criminal activity each related was clear from the information they provided. Further, the reliability of that information * * * was demonstrated through its corroboration by the observations Detective Tidd stated he had made on that day. Together those matters portray a fair probability that evidence of criminal activity would be found in the place to be searched. Probable cause for the warrant on which the search was performed was therefore shown.

*Id.*

{¶ 21} Similarly, in *State v. Curry*, 2d Dist. Montgomery No. 25384, 2013-Ohio-5454, we held that an affidavit containing a confidential source's information about drug activity at a certain duplex and a detective's own observations from his independent investigation of the matter sufficiently established probable cause for issuing a search warrant. *Id.* at ¶ 13. The supporting affidavit in *Curry* averred that the detective was a seasoned officer who received a tip from the confidential source that crack cocaine was being sold out of a duplex. *Id.* at ¶ 12. The affidavit also averred that the detective conducted surveillance on the residence and observed vehicles and people coming and going in a manner that was consistent with other drug houses that the detective had investigated in the past. *Id.* The affidavit further averred that the detective conducted two successful controlled drug buys at the duplex using the confidential source. *Id.* Given this information, we held that "[a]n issuing magistrate could have decided that there was a fair probability that contraband would be found in the duplex." *Id.* at ¶ 13.

**{¶ 22}** Additionally, in *State v. Harris*, 2d Dist. Montgomery No. 18913, 2002 WL 1041868 (May 24, 2002), we indicated that a detective's direct observations from a drug investigation were sufficient to demonstrate probable cause for purposes of issuing a search warrant. Specifically, we stated that:

> The affiant relied on his own knowledge to describe how the "confidential informant" entered the apartment, with money but no drugs, and shortly thereafter emerged with drugs but no money, and that it happened on two occasions. The affiant also set out his own observations of the location and the significance of those observations. These direct observations of the affiant were fully sufficient to demonstrate probable cause that drugs were being sold at the location, and would likely be found there in a subsequent search.

*Id.* at *3. *See also State v. Talley*, 2d Dist. Montgomery No. 24765, 2012-Ohio-4183, ¶ 10 (affidavit provided probable cause to issue a search warrant for a residence where "the controlled buys along with other surveillance strongly suggested that the house was repeatedly being used for drug transactions").

**{¶ 23}** In this case, Glynn correctly points out that Det. Neiford's supporting affidavit did not aver whether the CS had provided reliable information to law enforcement in the past or how the CS knew Glynn and his wife. Det. Neiford did, however, aver that the CS called Glynn on two different days in May 2018 and made arrangements to purchase heroin from Glynn at Glynn's residence. Det. Neiford also averred that prior to the two drug deals at Glynn's residence, he and two other investigating detectives searched the CS to ensure that he/she had no contraband on his/her person and provided

the CS with buy money. Det. Neiford further stated that he and the other detectives observed the CS walk toward Glynn's residence, enter the residence after being invited inside by Glynn, and exit the residence with the purported heroin/fentanyl in his/her possession. Det. Neiford additionally averred that he and the other investigating detectives electronically monitored the CS during the two drug deals and noted that Glynn was the person who handed the CS one gram of heroin/fentanyl in exchange for the buy money.

{¶ 24} When considering the totality of these circumstances, we find that the information obtained from the CS and the direct observations of Det. Neiford provided a substantial basis for the issuing judge to conclude that there was a fair probability that evidence of criminal activity would be found at Glynn's residence.

{¶ 25} Glynn, however, also argues that the supporting affidavit was insufficient to establish probable cause because it does not clearly aver that the substance purchased during the drug deals was heroin/fentanyl. Glynn claims that the illegal nature of the substance is unclear because Det. Neiford's affidavit referred to the substance as "purported heroin/fentanyl" and did not include any information as to whether the substance was verified to be an illegal drug. According to Glynn, the failure to field test or otherwise verify the substance as an illegal drug prevented a finding of probable cause. We disagree.

{¶ 26} A showing of probable cause requires proof less than that beyond a reasonable doubt or by a preponderance of the evidence; it is only the probability, and not a prima facie showing, of criminal activity. *State v. Taylor*, 82 Ohio App.3d 434, 440-41, 612 N.E.2d 728 (2d Dist.1992); *George*, 45 Ohio St.3d at 329, 544 N.E.2d 640; *Gates*,

462 U.S. at 235, 103 S.Ct. 2317, 76 L.Ed.2d 527. Therefore, "as to probable cause, an evaluation of whether a substance purchased is a controlled substance need not be based on an actual laboratory chemical analysis, but rather a reliable informant's observation is sufficient." *State v. Strait*, 10th Dist. Franklin No. 81AP-218, 1981 WL 3671, *2 (Dec. 15, 1981), citing *State v. Karr*, 44 Ohio St.2d 163, 164, 339 N.E.2d 641 (1975) ("A common and acceptable basis for the informant's information is his personal observation of the facts or events described to the affiant.") For example, when a confidential informant purchases a substance and then brings the purchased substance to a law enforcement officer, "[s]uch action can establish a reasonable inference that the informant would not have done this if he did not have reason to believe that the substance was a controlled substance." *Id.* at *2.

{¶ 27} Here, the fact that Glynn represented to the CS that the substance being purchased was heroin warranted suspicion as to the illicit nature of the substance that rose to the level of probable cause. Given the totality of the circumstances in this case, which included the information provided by the CS and Det. Neiford's observations, we find that there was a substantial basis for the issuing judge to conclude that the substance purchased at Glynn's residence was an illegal drug.

{¶ 28} For all the foregoing reasons, we find that Det. Neiford's supporting affidavit sufficiently established probable cause to search Glynn's residence. Because there was sufficient probable cause, the search warrant for Glynn's residence was properly issued. Therefore, the evidence found during the search, including the evidence obtained from the two cell phones, was not subject to suppression. Accordingly, the trial court did not err as a matter of law when it overruled Glynn's motion to suppress.

{¶ 29} Glynn's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 30} Under his second assignment of error, Glynn contends that the trial court abused its discretion and committed plain error by denying his motion to suppress because: (1) the trial court did not conduct an underlying evaluation of whether it was appropriate to issue a search warrant; and (2) the supporting affidavits were accepted solely on the basis of Det. Neiford's capacity as a law enforcement officer. We disagree with both of Glynn's claims.

{¶ 31} As to Glynn's first claim, the record establishes that the parties agreed that the underlying evaluation for determining whether the search warrants were properly issued was limited to a "four corners analysis" of the supporting affidavits. *See* Trans. (Oct. 10, 2018), p. 6. The record further establishes that the trial court conducted such an analysis by determining whether the affidavits provided sufficient probable cause for the requested searches. Contrary to Glynn's claim otherwise, the trial court's entry denying Glynn's motion to suppress set forth the trial court's probable cause evaluation in detail. Therefore, we find no abuse of discretion or plain error with regard to the trial court's underlying evaluation of the search warrants.

{¶ 32} Glynn's second claim—that the trial court approved the supporting affidavits simply because Det. Neiford was a law enforcement officer—is not supported by the record. The record indicates that the trial court considered all of the information provided in the supporting affidavits before denying Glynn's motion to suppress. That information included Det. Neiford's observations and the information Det. Neiford obtained from the

CS. Therefore, we find no abuse of discretion or plain error with regard to Glynn's second claim.

{¶ 33} Glynn's second assignment of error is overruled.

## Conclusion

{¶ 34} Having overruled both assignments of error raised by Glynn, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Marcy A. Vonderwell
Joe Cloud
Hon. James A. Brogan, Visiting Judge