[Cite as *State v. Tarver*, 2025-Ohio-2167.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-49 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CR 0139 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| DARNELL A. TARVER | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 20, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

[[Applied Signature]]
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

[[Applied Signature 2]]
MARY K. HUFFMAN, JUDGE

[[Applied Signature 3]]

ROBERT G. HANSEMAN, JUDGE

**OPINION**
GREENE C.A. No. 2024-CA-49

LUCAS W. WILDER, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee

HUFFMAN, J.

**{¶ 1}** Darnell A. Tarver appeals from his convictions, following pleas of no contest, of trafficking in cocaine and having weapons while under disability. Tarver challenges the denial of his motion to suppress. For the reasons that follow, the judgment of the trial court will be affirmed.

**Facts and Procedural History**

**{¶ 2}** Tarver was charged with several offenses after another man was arrested on an active warrant and found to be in possession of cocaine. We will refer to this other man as "the suspect"; his name appeared in the original affidavits in support of search warrants but was later redacted in the trial court proceedings. The suspect advised officers that Tarver had provided him with the cocaine at Tarver's home on Thoreau Lane (the Thoreau residence) in Xenia. Search warrants were obtained and executed at the Thoreau residence and at other locations connected to Tarver. On March 10, 2023, Tarver was indicted on two counts of trafficking in cocaine, two counts of possession of cocaine, one count of illegal manufacture of drugs, and one count of having weapons while under disability. Three of the counts contained forfeiture specifications.

{¶ 3} Tarver filed a motion to suppress, challenging the search warrants for the Thoreau residence, another residence, a storage unit, and a bank account held by Tarver at Woodforest National Bank, all of which were in Xenia. He argued that the affidavits supporting the four search warrants had not set forth probable cause for the issuance of the warrants, that the command portion of the search warrants had not identified the items to be searched for and seized with sufficient particularity, that the affidavits set forth "stale and remote" facts in that they failed to state when events were alleged to have occurred, and that the affidavits lacked a factual basis to support the issuance of search warrants.

{¶ 4} A hearing on the motion to suppress occurred on July 28, 2023. At the hearing, the court admitted the warrants for a "four-corner analysis" to determine if they sufficiently supported a finding of probable cause, and the parties filed post-hearing briefs. The court overruled the motion on December 26, 2023. In doing so, the court found that the suspect's statement that he had recently obtained the cocaine found on his person from Tarver at his Thoreau residence had provided probable cause to issue the initial search warrant for that residence, and the evidence obtained from the execution of that warrant had provided support for the findings of probable cause in the subsequent affidavits.

{¶ 5} After the motion to suppress was overruled, Tarver pled no contest to an amended count of trafficking in cocaine[1] and to having weapons while under disability; he also agreed to forfeit drugs, a gun, and money in two bank accounts by pleading no contest to two of the forfeiture specifications. The State agreed to dismiss the four other counts and the third forfeiture specification. The State also agreed to an aggregate mandatory

---

[1] Tarver was originally charged with trafficking in cocaine in an amount equal to or exceeding 100 grams; the amount was amended to equal to or exceeding 27 grams, but less than 100 grams.

sentence of 3 to 4.5 years. The trial court found Tarver guilty on his no contest pleas and imposed the agreed-upon sentence. Tarver appeals.

**Assignment of Error and Analysis**

{¶ 6} Tarver raises one assignment of error. He claims that the trial court erred in overruling his motion to suppress for three reasons. His arguments specifically relate to the provisions of the affidavit in support of the search warrant for the Thoreau residence (the first of the warrants issued). First, Tarver contends that the affidavit contained stale information, with no nexus between the alleged offenses, the objects to be seized, and the places to be searched. He specifically claims that the third paragraph of the affidavit lacked a temporal and spatial connection to the Thoreau residence. According to Tarver, the affidavit failed to establish that the cocaine referred to therein was the cocaine provided by Tarver. Second, Tarver argues that the affidavit failed to establish the veracity of the suspect who provided incriminating information. Finally, he asserts that the affidavit was facially deficient, and the good faith exception did not apply.

{¶ 7} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "The very nature of the questions presented requires a case-by-case fact-driven analysis." *State v. Castagnola*, 2015-Ohio-1565, ¶ 32, citing *State v. Smith*, 2009-Ohio-6426, ¶ 14.

{¶ 8} "The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution requir[e] that a warrant only be issued if probable cause for the warrant is demonstrated through an oath or affidavit." *State v. Robinson*, 2004-Ohio-5281, ¶ 9 (2d Dist.) "While a probable-cause determination for an arrest warrant is similar in nature to that for a search warrant, a search-warrant inquiry is much more complex and

presents special considerations." *Castagnola* at ¶ 34, citing 2 LaFave, *Search and Seizure*, Section 3.1(b) (5th Ed. 2012). These include "how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *Id.*, citing 2 LaFave, *Search and Seizure*, Section 3.7(a), (b), and (d). "A showing of probable cause requires proof less than that beyond a reasonable doubt or by a preponderance of the evidence; it is only the probability . . . of criminal activity." *State v. Glynn,* 2020-Ohio-4763, ¶ 26 (2d Dist.).

{¶ 9} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). "When oral testimony is not offered in support of a search-warrant affidavit, the magistrate determines the sufficiency by 'evaluating only [the facts alleged within] the four corners of the affidavit and [applying] an objective reasonableness standard.' " *Castagnola* at ¶ 39, quoting *United States v. Richards*, 659 F.3d 527, 559, fn. 11 (6th Cir. 2011) (Moore, J., concurring in judgment only), citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Magistrates "may make reasonable inferences when deciding whether probable cause exists to issue a warrant." (Citation omitted.) *Id.* at ¶ 41. "However, a magistrate cannot be viewed as neutral and detached if the magistrate issues a search warrant that is unknowingly based on the police officer's conclusions." *Id.,* citing *State v. Joseph*, 25 Ohio St.2d 95, 96 (1971).

{¶ 10} The "duty of a reviewing court is simply to ensure that the magistrate had a

substantial basis for concluding that probable cause existed." *George* at paragraph two of the syllabus, citing *Gates.* To that end, reviewing courts must examine the totality of the circumstances. *Gates* at 238. "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George* at paragraph two of the syllabus, citing *Gates.*

{¶ 11} When "a reviewing court determines that a warrant should not have been issued, it must then determine whether the good faith exception applies, and that question is a question of law, subject to de novo review by the appellate court." *Castagnola* at ¶ 32. "The good-faith exception allows evidence obtained from a search warrant, later found to lack probable cause, to be admissible if law enforcement acted in objectively reasonable reliance on the warrant." *George* at 330.

> [T]he good faith exception does not apply where (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his judicial role, (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and (4) the warrant was so facially deficient that the executing officers cannot reasonably presume it to be valid.

*State v. Ojezua,* 2020-Ohio-303, ¶ 44 (2d Dist.), citing *United States v. Leon*, 468 U.S. 897, 923 (1984); *State v. Hoffman,* 2014-Ohio-4795, ¶ 32.

{¶ 12} Four affidavits were admitted and analyzed at the suppression hearing, and

each successive affidavit provided additional information to the one before it as the investigation progressed. While the focus of Tarver's brief appears to be limited to the search of the Thoreau residence, we will review each affidavit.

{¶ 13} The first affidavit contained a photo of Tarver's residence on Thoreau Lane and set forth the extensive law enforcement training and experience of Affiant Xenia Police Detective Jeff Moore, including his assignment to the Greene County ACE Task Force since September 2020. Moore averred that on November 30, 2022, Fairborn Police Officer Mulcahy had arrested a suspect (the suspect whose name was redacted from the affidavit) for an active warrant. At the time, the suspect stated that he had "coke," a street term for cocaine, on his person. Mulcahy retrieved a bag containing a chalky white substance from the suspect's coat pocket and removed the suspect's handcuffs to allow him to retrieve more of the suspected cocaine from his underwear.

{¶ 14} Moore further averred that, on December 2, 2022, he and Detective Margioras interviewed the suspect, who informed the officers that he had received the cocaine from Darnell Tarver, whom he had known for many years in Xenia. He specifically stated that on November 29, 2022, Tarver had provided him with the cocaine at Tarver's home, located at the corner of Thoreau Lane and Reid Avenue in Xenia. When Moore showed the suspect a photo of Tarver's residence on Thoreau Lane, the suspect identified it as the place where he had received the cocaine, and he provided Tarver's phone number from memory.

{¶ 15} Moore averred that, after the interview, he drove by Tarver's residence on Thoreau Lane, and a black Chevrolet Silverado was parked in the driveway. Moore confirmed that Tarver was the registered owner of the vehicle through the Ohio Law Enforcement Gateway. Using the parcel number of the property from the Greene County Auditor's website and entering it into the utility billing department in Xenia, Moore confirmed

that the water and sewer accounts for the property were in Tarver's name. The billing information also reflected the same phone number for Tarver as the one provided by the suspect. Moore further detailed his familiarity with "the modus operandi of persons involved in the illicit distribution of controlled substances." He stated that he had probable cause to believe that evidence of possession and trafficking of drugs would be found at the Thoreau residence. A search warrant for the Thoreau residence was issued on December 6, 2022.

{¶ 16} The second affidavit was also prepared by Detective Moore and contained a photo of a one-story residence on Cornwall Drive in Xenia (the Cornwall residence). In the second affidavit, Moore averred that he had presented a search warrant and affidavit to a Xenia Municipal Court judge for the Thoreau residence, which had been approved; the warrant had been served on December 8, 2022. Property seized from the Thoreau residence included 498 grams of cocaine, suspected marijuana, a firearm, digital scales, and other items believed to have been used to manufacture cocaine. Moore stated that another detective had conducted a positive field test and weighed the cocaine. Moore had observed a 2014 black Chevrolet Camaro, registered to Tarver, at the Cornwall and Thoreau residences, and a receipt found at the Thoreau residence from a Xenia automobile repair shop listed the Cornwall address and Tarver's name. Moore averred that he had probable cause to believe that illegal drugs, including but not limited to marijuana and cocaine, as well as documentation related to the firearm, would be found at the Cornwall address.

{¶ 17} Moore further averred that Tarver had been convicted in Greene County of felony drug possession three times, of having weapons while under disability, and of trafficking in cocaine, and that Tarver could not legally possess a firearm. In Moore's experience, drug traffickers commonly stored drugs in one location, known as a "stash house," and lived elsewhere. According to Moore, an electrical bill from the Thoreau

residence in Tarver's name in the low amount of $28.00 suggested to Moore that the home was not used as a residence. Moore also stated that there were no beds or other furniture in the bedrooms of the Thoreau home, and the kitchen did not appear to be used to prepare food. Moore averred that detectives were staged at the Cornwall address to secure it, and that probable cause existed to believe evidence of possession and trafficking in drugs and having weapons while under disability would be found there, as well as documentation related to the firearm. Moore averred that Tarver was known to reside at the Cornwall residence. Moore again stated his familiarity with "the modus operandi of persons involved in the illicit distribution of controlled substances."

{¶ 18} The third affidavit contained a photo of a Wal-Mart on Hospitality Drive in Xenia, within which Woodforest National Bank was located. Affiant Detective Sean Williams of the Beavercreek Police Department described his law enforcement experience in the affidavit and related the suspect's arrest by Officer Mulcahy and the subsequent search of the Thoreau residence. Williams averred that a bank statement in Tarver's name from Woodforest National Bank had been found in the Thoreau residence and reflected a balance of $15,115.56. A photo of the statement was included in the affidavit. Williams averred that probable cause existed to believe that proceeds from drug trafficking would be found in Tarver's bank accounts. He sought a warrant to seize the contents of Tarver's accounts at Woodforest National Bank, and he described his familiarity with persons involved in the illicit distribution of drugs.

{¶ 19} The fourth affidavit included a photo of a SmartStop self-storage business on Bellbrook Avenue in Xenia. Detective Williams averred that the Woodforest National Bank statement in Tarver's name found at the Thoreau residence had reflected a payment to that business; upon further investigation, Williams learned from the manager of the storage

facility that Tarver and his wife rented unit 3233. Williams averred that drug traffickers often place assets in corporate entities to avoid detection of those assets, and probable cause existed that evidence of drug trafficking would be found in the storage unit.

{¶ 20} In arguing the alleged lack of a temporal and spatial nexus to the Thoreau residence, Tarver mischaracterizes the record before us. The suspect was arrested on November 30, 2022, and he produced suspected cocaine to Fairborn police. Two days later, he advised Detectives Moore and Margioras that Tarver, whom the suspect had known for many years, had provided the cocaine at the Thoreau residence in Xenia the day before his arrest. These dates were temporally close to the issuance of the warrant on December 6, 2022. Thus, the information was not stale, and the location of the suspect's arrest in Fairborn was spatially close to Tarver's residence in Xenia. Although Tarver argues that the affidavit did not specify the date on which the suspect had obtained the cocaine from Tarver, the affidavit in fact stated that "on or about November 29, 2022," the day before his arrest, Tarver had provided the suspect with cocaine at his Thoreau residence. There was no suggestion that the cocaine retrieved from the suspect may not have been the cocaine supplied by Tarver; on December 2, 2022, the suspect was interviewed about the source of cocaine retrieved from his person on the day of his arrest, and he said Tarver had provided it, which was sufficient for probable cause.

{¶ 21} Regarding the alleged lack of veracity of the suspect, Tarver failed to raise the issue in his motion to suppress. " '[Generally,] this court will not consider arguments that were not raised in the courts below.' " *Castagnola* at ¶ 67, quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* 67 Ohio St.3d 274, 279 (1993). Even if the issue were not waived, Tarver's argument lacks merit. The suspect provided an address and phone number, both of which were proven to be Tarver's. A vehicle registered to

Tarver was located in the driveway of the Thoreau residence, and the utility billing for the property was in his name. Thus, the information provided by the suspect was corroborated during the investigation, prior to the search of the Thoreau residence.

{¶ 22} For the foregoing reasons, and pursuant to our deferential review, the totality of the circumstances supported the issuing court's conclusion that the information from the suspect and Detective Moore's observations provided a substantial basis to conclude that there was a fair probability that evidence of possession of drugs and trafficking in drugs would be found at Tarver's Thoreau residence. As the trial court found, items found at that residence provided probable cause for the subsequent warrants, and this was especially so given Tarver's prior drug-related criminal history. Because there was probable cause, the search warrants were properly issued, and the evidence seized was not subject to suppression.

{¶ 23} Finally, even if we were to conclude that there was not a substantial basis for the issuance of the warrants (which we do not), the evidence would not have been subject to suppression due to the good faith exception to the exclusionary rule. There was no suggestion that Moore intentionally misled the issuing judge with information Moore knew to be false, that the issuing judge abandoned his judicial role, that the affidavit was so lacking in indicia of probable cause as to render the issuing judge's belief therein entirely unreasonable, or that the warrant was facially deficient. Moore acted with objective good faith in obtaining the search warrant from a detached and neutral issuing judge, and the content of the affidavit established probable cause. In other words, it appears that the good faith exception would apply.

{¶ 24} Based upon the foregoing, Tarver's assignment of error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HANSEMAN, J., concur.